JACK FLYNN ET UX. v. HARRIET HANCOCK.

Decided April 6, 1904.

**1.—Insane Person—Guardianship—Jurisdiction—Residence.**

The fact that an insane person is confined in an asylum situated in another county than the one in which her estate is situated does not deprive the latter county of its jurisdiction in matters of guardianship of her estate, her residence still remaining in such county. Rev. Stats., art. 2566.

**2.—Lunatic—Guardian—County Court.**

A county court has the authority to appoint a guardian for a lunatic on its own motion. Rev. Stats., arts. 2574, 2742.

**3.—Same—Homestead.**

The detention of a lunatic in an asylum, being involuntary on her part, does not affect the homestead character of her estate.

**·4.—Guardian—Lunatic—Suit.**

Suit for property of a lunatic was properly brought in her name by her guardian.

Appeal from the County Court of Lamar. Tried below before Hon. Ben. H. Denton.

*J. R. G. Long* and *Hodges & Moore,* for appellants.

*Moore, Park & Birmingham,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to a parcel of land in the city of Paris, Texas, instituted by appellee, a lunatic, through her guardian, J. P. Morris, against Jack Flynn and his wife, Alice Flynn. Appellants answered by general denial and a plea of not guilty, and specially pleaded that they had purchased the land from Jerry Hancock, Claude Hancock and Ulric Hancock, and claimed only to the extent of the interest that their vendors had in the land, which was one-half of it.

The cause was tried by the court and judgment rendered in favor of appellee for the land and $48 for use of it, it being specially provided in the decree that appellants were not divested thereby of any title they might have to the land, and that appellants should not be precluded from setting up the value of their improvements in any suit to try title to the land or to partition the same.

It appears from the statement of facts that about 1893 Jerry Hancock, Sr., died, leaving surviving him his wife Harriet and their two children, Claude and Ulric, and Jerry Hancock, Jr., an illegitimate son. At the time of the death of the senior Jerry Hancock, he and his wife were occupying the property in controversy as their homestead, and she, with her minor children, Claude and Ulric, continued to occupy it as their homestead until February 24, 1899, when Harriet Hancock was adjudged a lunatic and was confined in the asylum for the insane at Terrell, Texas. The Hancocks are negroes, Claude and Ulric

being respectively 19 and 16 years of age. On March 15, 1902, Dr. J. P. Morris was appointed the guardian of the estate of Harriet Hancock, the judgment of the county court reciting that she was a lunatic and a citizen of Lamar County.

After Harriet was confined in the lunatic asylum, Jack Flynn procured a deed to the premises in controversy to his wife from the illegitimate son of Jerry Hancock, deceased, and the two minors, and made improvements on the property.

There is no merit whatever in the first assignment of error. The fact that Harriet Hancock was confined in an asylum situated in another county than Lamar did not deprive the latter county of its jurisdiction in matters of guardianship of her estate. She was not deprived, by being placed in the asylum, of her residence in Lamar County, within the purview of article 2566, Revised Statutes.

While it does not appear, as contended by appellants, that the county court appointed the guardian of the estate of Harriet Hancock without an application having been made therefor, still the court had the authority to appoint a guardian on its own motion. In article 2574, Revised Statutes, it is provided that whenever it shall come to the knowledge of the county judge that a minor in his county is without a guardian of his person or estate, he shall institute proceedings to appoint such guardian, and in article 2742 it is provided that all provisions relating to the guardianship of the persons and estates of minors shall apply to the guardianships of the persons and estates of persons of unsound mind and habitual drunkards, when not inconsistent with the latter classes. The judgment could not be attacked as a collateral proceeding.

After the death of her husband Harriet Hancock elected to use and occupy the property in controversy as her homestead and it was not subject to partition. Revised Statutes, art. 2057. The detention of Harriet Hancock in the lunatic asylum did not affect the homestead character of the premises. The detention was not voluntary on her part, and without a voluntary abandonment upon the part of the survivor the status of the homestead would not be disturbed. Foreman v. Meroney, 62 Texas, 723; Hall v. Fields, 81 Texas, 553. It would be inhuman and cruel in the extreme to deprive an insane person of the homestead on account of involuntary absence from it brought about through the intervention of the State. The case of Shields v. Aultman, 20 Texas Civ. App., 345, cited by appellants, does not sustain any such doctrine, and neither do we believe that it would find countenance in any civilized country. The case cited merely holds that the husband can abandon and sell a homestead without the consent of a wife hopelessly insane. That is a far different proposition from the one involved in this cause.

There is no merit in the fourth assignment of error, which states that the suit was prosecuted by and the judgment rendered for the lunatic,

and not in the name of the guardian. The suit was prosecuted by the guardian of Harriet Hancock. In the original petition it is recited that "Harriet Hancock, of unsound mind, who sues by her duly appointed and qualified guardian, J. P. Morris," brought the suit. The judgment was that "Harriet Hancock, of unsound mind, by her guardian J. P. Morris, do have and recover," etc.

The judgment is affirmed.

*Affirmed.*