## OWENS v. STOVALL.

### No. 1494.

Court of Civil Appeals of Texas. Waco.

Oct. 5, 1933.

Rehearing Denied Nov. 2, 1933.

C. E. Florence and Edwin M. Fulton, both of Gilmer, for appellant.

Guinn & Guinn, of Rusk, for appellee.

GALLAGHER, Chief Justice.

This appeal is prosecuted from a judgment of the district court of Cherokee county entered on the hearing and determination of an appeal from a judgment of the county court of that county sitting in probate. The judgment presented for review in this ap-

peal established the jurisdiction of the county court of Cherokee county over the person and estate of Fred Slaton, a person of unsound mind, and confirmed the appointment by said court of appellee as his guardian. The principal issue involved, and the only one necessary to be determined, is whether said county court of Cherokee county had jurisdiction, in a venue sense, to hear and determine appellee's application for guardianship of said lunatic.

Fred Slaton, a single man residing in Gregg county, Tex., was on February 16, 1920, by the county court of said county adjudged to be a person of unsound mind. Shortly thereafter he was committed to the insane asylum at Rusk in Cherokee county, Tex., where he has been confined continuously ever since. He has been, since the date of such adjudication, hopelessly and incurably insane, without lucid intervals and incapable of intelligent action. At the time of such adjudication he resided with his father and mother as a member of their family, was about thirty-five years old, and had no property. His said father and mother at that time owned and resided upon 135 acres of land in Gregg county. His father, George Slaton, died intestate, July 28, 1931. Fred Slaton inherited from him an undivided one-fourth interest in and to said tract of land. Such interest was subject to the rights, if any, acquired by the holder of a certain oil and gas lease executed by his father and mother thereon, and further subject to the rights, if any, of the holders of a conveyance by them of an undivided one-half interest in and to the mineral estate in said land subject to such lease. Several producing oil wells are now being operated on said land. Appellant, Lillian Owens, is the sister of Fred Slaton and is not asserting any claim adverse to his estate.

Appellee, F. M. Stovall, on the 31st day of March, 1932, applied to the county court of Cherokee county for appointment as guardian of the person and estate of Fred Slaton. He alleged in such application that Fred Slaton resided in Cherokee county and that his estate was situated in Gregg county. Citation on said application was duly issued and served and appellee thereafter, on the 12th day of April, 1932, was appointed guardian of the person and estate of said ward and promptly qualified as such.

Appellant, Mrs. Lillian Owens, was on April 29, 1932, duly appointed, by the county court of Gregg county, guardian of the estate of the said Fred Slaton and properly qualified as such.

Appellant thereafter, on June 25, 1932, in her capacity as guardian of Fred Slaton under appointment of the county court of Gregg county, and also in her individual capacity as next of kin to him, filed an application in the guardianship proceedings pending in the county court of Cherokee county for the cancellation of the appointment of appellee as such guardian and for the dismissal of such proceedings, or in the alternative, to be substituted for appellee as guardian therein and to be permitted to qualify as such. Appellee answered said application and alleged that Fred Slaton was in fact a resident of Cherokee county and that jurisdiction over his person and estate was vested in the county court of such county. Other allegations of said answer are immaterial to the disposition of this appeal. The court heard said application and answer on July 5, 1932, and found as a fact that the ward, Fred Slaton, was not a resident of said county and had no property situated therein and that the court was without jurisdiction over his person or estate. The court thereupon entered an order vacating the appointment of appellee as such guardian, declaring all of such proceedings null and void and dismissing the application.

Appellee appealed from said order to the district court of said county. The cause was tried in said court on the 11th day of March, 1933, the order of the county court vacating the appointment of appellee and dismissing the proceedings set aside, appellee confirmed as guardian, and appellant's contest denied.

### Opinion.

■■ Appellant, by her first assignment of error, assails the finding of the trial court that the ward, Fred Slaton, resided in Cherokee county and that the county court of said county had jurisdiction of his person and estate and authority to appoint a guardian thereof. The several county courts of this state are given by the Constitution and laws thereof potential jurisdiction to appoint guardians of lunatics and persons non compos mentis. Constitution, article 5, § 16; R. S. art. 4102. The statutes of this state further prescribe the county in which a particular proceeding for the appointment of a guardian shall be begun. R. S. art. 4111 (as amended by Acts 1929, c. 31, § 1 [Vernon's Ann. Civ. St. art. 4111]). Subdivision 3 of said article expressly provides that proceedings for the appointment of a guardian of a person of unsound mind shall be begun in the county in which such person resides. While the terms of such article merely prescribe the venue of such proceedings, a proper application for appointment of a guardian for such a person, if he be a resident of this state, should allege that he resides in the county in which the same is filed. On the hearing, proof of such allegation should be submitted, and unless the same be found to be true, such application should be refused. Stewart v. Poinboeuf, 111 Tex. 299, 233 S. W. 1095, 1096, par. 1. While the case cited involved an application for appointment as administrator of the estate of a deceased

person, the rule there announced has equal application in guardianship proceedings. Wootters v. Wynne (Tex. Civ. App.) 7 S. W.(2d) 940, 941, par. 1. The burden of proving facts showing venue of the proceeding being on an applicant for guardianship in the first instance, no objection or plea by any one raising such issue is required.

█ Appellee, in his original application in the county court, alleged that Fred Slaton resided in Cherokee county, and the court so found and recited in the order appointing him guardian. This constituted an adjudication of jurisdictional venue and was entitled to be given conclusive effect until vacated or set aside in a direct proceeding. Stewart v. Poinboeuf, supra, p. 1097. Appellant's motion or application to review and set aside the appointment of appellee as such guardian was authorized by an express provision of the statutes. R. S. art. 4328. She was a party interested, within the meaning of said article, since she was the nearest of kin to the ward, and not being shown to be disqualified, was prima facie entitled to guardianship of her said brother. R. S. art. 4121. Her motion or application assailed the order appointing appellee guardian of her brother on the ground that he was not a resident of Cherokee county but of Gregg county, and that the court was without jurisdiction (in a venue sense) to appoint a guardian of his person and estate. This constituted a direct and not a collateral attack on such order of appointment. De Cordova v. Rodgers (Tex. Civ. App.) 67 S. W. 1042, 1043 (second column).

█ The related words "reside" and "residence" have been held to have many and varied meanings. Their definition, when used in a statute, depends on the legislative purpose as well as the context, and must be construed in accordance therewith. 54 C. J. p. 702 et seq. The following definitions of said words were quoted and approved by the Circuit Court of Appeals for the First Circuit in Petition of McLauchlan, 1 F.(2d) 5, 7:

"No better definition has been given of 'residence' than that given by Circuit Judge Jenkins in Re Garneau, 127 F. 677, 679, 62 C. C. A. 403, 405, where the court said: 'Residence has been defined to be a place where a person's habitation is fixed, without any present intention of removing therefrom. It is lost by leaving the place where one has acquired a permanent home and removing to another place animo non revertendi, and is gained by remaining in such new place animo manendi. * * * The term is an elastic one, and difficult of precise definition. The sense in which it should be used is controlled by reference to the object. Its meaning is dependent upon the circumstances then surrounding the person, upon the character of the work to be performed, upon whether he has a family or a home in another place, and largely upon his present intention.'

"In Inhabitants of Warren v. Inhabitants of Thomaston, 43 Me. 406, 418 (69 Am. Dec. 69), in construing the word 'reside,' the court said: 'When, however, a person voluntarily takes up his abode in a given place, with intention to remain permanently, or for an indefinite period of time, or, to speak more accurately, when a person takes up his abode in a given place, without any present intention to remove therefrom, such place of abode becomes his residence or home, and will continue to be his residence or home, notwithstanding temporary personal absences, until he shall depart with intention to abandon such home.' "

The above definitions indicate that volition, intention, and action are all elements to be considered in determining where a person resides, and such elements are equally pertinent whether the word is used to denote a permanent residence or domicile or a mere temporary residence.

█ Fred Slaton resided and had his domicile in Gregg county at the time he was adjudged to be of unsound mind. He has been since said time hopelessly insane and incapable of intelligent action. His removal from Gregg county and confinement in the insane asylum at Rusk in Cherokee county was by virtue of the commitment issued by the county court of Gregg county. Neither such removal nor such continued confinement can be deemed voluntary on his part. He was incapable, by reason of his mental condition, of forming the necessary intention to abandon his residence in Gregg county and establish a new residence, either temporary or permanent, in Cherokee county. Gulf, C. & S. F. R. Co. v. Lemons, 109 Tex. 244, 206 S. W. 75, 77, par. 3, 5 A. L. R. 943, and authorities there cited; 9 R. C. L. p. 550, § 13; Id., p. 552, § 16. Ordinarily, when a man is removed from his home and committed to an asylum, his family and friends, and of course his local property, if any, remain at such former home. We may reasonably conclude that the guardianship of his person and estate will be more faithfully and efficiently administered when opportunity for observation thereof by family and friends is afforded and where the property belonging to his estate is situated. Such considerations seem to indicate that the word "reside," as used in subdivision 3 of article 4111 of our Revised Statutes, should be construed to mean the permanent residence or domicile of the insane ward. We therefore conclude that Fred Slaton never acquired residence in Cherokee county within the meaning of said subdivision of said article. Flynn v. Hancock, 35 Tex. Civ. App. 395, 80 S. W. 245, 246; Schwartz v. West, 37 Tex. Civ. App. 136, 84 S. W. 282, 283; Wilson v. Bearden

(Tex. Civ. App.) 59 S.W.(2d) 214, 215, par. 1.

Appellee cites and stresses the case of Bagwell v. McCombs (Tex. Civ. App.) 31 S.W.(2d) 835. The facts involved ·in that case distinguish it from this. When the guardian in that case was appointed, both he and the ward resided in Dallas county. The ward was thereafter placed in the United States hospital at Little Rock, Ark., was released therefrom on parole, and voluntarily went to the state of Oklahoma and lived therein. Such action was evidently approved by his guardian, since he paid the ward's board while so living for a period of two and a half years, furnished him a monthly allowance of spending money and an automobile for his use. The guardian himself at that time lived in the state of Oklahoma. Since this is not a proceeding under the statute for removal of a guardian for cause, authorities cited by appellee on such issue are deemed inapplicable.

The finding of the trial court that Fred Slaton, at the time appellee applied to the county court of Cherokee county for guardianship of his person and estate, resided therein, is without support in the evidence, and the judgment of the court confirming the appointment of appellee as such guardian is here reversed, appellee's appointment as guardian is set aside, and his application for such appointment refused.